**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-11756

Non-Argument Calendar

————————————

RETONYA SCREEN,

*Plaintiff-Appellant,*

*versus*

ACTING COMMISSIONER OF SOCIAL SECURITY,

*Defendant-Appellee.*

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cv-24268-JEM

————————————

Before NEWSOM, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

Retonya Screen appeals the district court's order affirming the Social Security Administration's denial of her application for benefits.  We affirm.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Screen applied for disability benefits and supplemental security income, alleging that her medical conditions (including degenerative disc disease, chronic pain, lumbar radiculopathy, anxiety, depression, and insomnia) limited her ability to work. After the administration denied her applications initially and on reconsideration, Screen requested a hearing before an administrative law judge.

The administrative law judge found that Screen had the "residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)," with some additional limitations incorporated to accommodate her severe impairments. The administration presented a vocational expert to testify about the availability of jobs that Screen could perform. Screen stipulated to the expert's qualifications. The vocational expert testified that, because of Screen's residual functional capacity and impairments, her past work was not possible. But the vocational expert explained that an individual with the same residual functional capacity, impairments, age, education, and work experience as Screen could perform other jobs in the national economy such as a folder (with 23,000 jobs available in the national economy), a laundry sorter (with 22,000 jobs available), and a stock checker (with 25,000 jobs available). Screen did not challenge or question the vocational expert about the source of the job numbers, the methodology he used to calculate the job numbers, or the accuracy of the job numbers themselves.

Based on the vocational expert's testimony—which the administrative law judge "determined . . . [wa]s consistent with the information contained in the" Dictionary of Occupational Titles (DOT)—the administrative law judge found that there were jobs that existed in significant numbers in the national economy that Screen could perform.  Thus, the administrative law judge concluded, Screen was "capable of making a successful adjustment to other work" and was not disabled under the Social Security Act.

Screen requested review of this decision to the appeals council, but the council denied the request.  She then filed suit in the district court, seeking review of the administrative law judge's final decision.  The district court affirmed, and Screen appealed.

## STANDARD OF REVIEW

We review de novo the district court's decision on whether substantial evidence supports the administrative law judge's decision.  *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quotation and citation omitted).

## DISCUSSION

In determining whether a claimant is disabled, the administrative law judge must conduct a five-step sequential analysis. *See* 20 C.F.R.  § 404.1520(a)(4).   This includes finding whether the claimant:  (1) is unable to engage in "substantial gainful activity"; (2) has a "severe medically determinable physical or mental impairment"; (3) has such an impairment that meets or equals a listed impairment and meets the duration requirements; (4) can perform his past relevant work, in light of her residual functional capacity; and

(5) can make an adjustment to other work, in light of her residual functional capacity, age, education, and work experience. *Id.* Only step five is at issue in this case.

For step five, the administration must show that "jobs exist in the national economy in significant numbers that the claimant could perform in spite of h[er] impairments." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1360 (11th Cir. 2018). If the administration makes this showing, "the burden shifts back to the claimant to prove she is unable to perform the jobs suggested." *Goode*, 966 F.3d at 1278 (citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (1987)).

In making his determination, the administrative law judge "can consider both jobs data drawn from the DOT as well as from the testimony" of a vocational expert. *Washington*, 906 F.3d at 1360. "'Work which exists in the national economy' means 'work which exists in significant numbers either in the region where [the] individual lives or in several regions of the country.'" *Id.* at 1359 (citing 42 U.S.C. § 423(d)(2)(A), 20 C.F.R. § 416.966(a)).

To assess a vocational expert's testimony, we must apply a case-by-case approach, "tak[ing] into account all features of the vocational expert's testimony, as well as the rest of the administrative record." *Biestek v. Berryhill*, 587 U.S. 97, 108 (2019); *see also Hale*, 831 F.2d at 1010–11 ("We must scrutinize the record as a whole to determine if the [administrative law judge's] decision is reasonable and supported by substantial evidence."). A vocational expert need not provide "a precise count of job numbers" nor "formulate

opinions with more confidence than imperfect data allows" but he "cannot be both internally inconsistent and incomplete" in his testimony. *Goode*, 966 F.3d at 1284–85 (quotations and citations omitted).

On two grounds, Screen challenges the administrative law judge's finding that there were available jobs she could perform. First, she argues that the vocational expert's testimony could not be substantial evidence supporting the judge's finding because the expert vastly overstated the number of jobs Screen could perform in the national economy. Second, Screen argues that the administrative law judge's finding was not supported by substantial evidence because he did not conduct an independent investigation to verify the vocational expert's testimony. Neither argument prevails.

First, Screen supports her assertion that the vocational expert "vastly overstated" the number of jobs she could perform by providing her own job numbers based on her own research and analysis. But the problem with Screen's new job numbers is that they were never presented to the administrative law judge. "[W]hen the [appeals council] has denied review, we will look *only to the evidence actually presented* to the [administrative law judge] in determining whether the [administrative law judge's] decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998) (emphasis added).

To be sure, "[w]hen the [a]ppeals [c]ouncil refuses to consider new evidence submitted to it and denies review," the denial

of review is "subject to judicial review because it amounts to an error of law." *Id*. at 1324 (quoting *Keeton v. Dep't of Health and Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). But the exception does not apply here because Screen challenges the administrative law judge's decision to deny her benefits, not the appeals council's decision to deny review of the administrative law judge's decision. *Id*. ("[T]he issue before us is not whether the [council] correctly determined if the evidence was new and material, but instead whether the [administrative law judge's] decision is supported by substantial evidence."). "Thus, we will look at only the evidence that was before" the administrative law judge. *Id*.

Second, citing to *Goode*, Screen argues that the administrative law judge had an affirmative duty to "independently verify" the vocational expert's testimony by conducting his own research. But Screen's reliance on *Goode* is misplaced. In *Goode*, the vocational expert "based his testimony about available jobs on a specific DOT code and a mismatched [standard occupation classification] group code," which made the testimony "internally inconsistent."[1] *See* 966 F.3d at 1282–83. The error within the vocational expert's chosen methodology, we noted, was "so substantively

---

[1] The DOT groups jobs into occupations based on similarities and assigns each occupation a code number. But the DOT codes do not provide statistical information about the number of jobs available in the national economy. *Goode*, 966 F.3d at 1281. So a vocational expert must look to other sources to find employment statistics. *Id*. One of the sources the *Goode* expert relied on uses the standard occupation classification system to group together detailed occupations with similar job duties. *Id*.

fundamental and serious that it tainted the testimony that followed." *Id.* at 1283. Because "[t]he vocational expert was wrong, and clearly so," his testimony was insufficient for the administration to sustain its burden of proof at step five. *Id.* at 1282.

Here, there was no internal inconsistency in the record. The vocational expert didn't testify about his methodology. And Screen did not challenge the vocational expert's job number estimates, the source of the job numbers, or the methodology used to calculate the estimate. A vocational expert's testimony that is neither challenged nor contradicted "may count as substantial evidence even when unaccompanied by supporting data." *Biestek*, 587 U.S. at 105 (explaining that when there was no demand for supporting data and "nothing in the rest of the record conflicts with anything [the vocational expert] says" the "testimony would be the kind of evidence—far 'more than a mere scintilla'—that 'a reasonable mind might accept as adequate to support' a finding about job availability").

Because there was no "apparent conflict" in the vocational expert's opinion, the administrative law judge properly relied on the vocational expert's testimony as substantial evidence that Screen was capable of making a successful adjustment to other work and was not entitled to the requested benefits. *See Washington*, 906 F.3d at 1358 (noting that administrative law judges have a duty "to identify and resolve apparent conflicts between DOT data and [vocational expert] testimony . . . *when the record reveals an*

*apparent conflict*" (emphasis added)).   And thus, the district court made no error in affirming the administrative law judge's decision.

**AFFIRMED.**