[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-12678
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 9, 2012
JOHN LEY
CLERK

D.C. Docket No. 3:10-cv-00100-TEM

INA WATKINS,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 9, 2012)

Before HULL, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Appellant Ina Watkins appeals the magistrate judge's order affirming the

Social Security Commissioner's denial of her applications for disability insurance benefits, 42 U.S.C. § 405(g), and supplemental security income ("SSI") benefits, 42 U.S.C. § 1383(c)(3).[1] After review, we vacate and remand for additional proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

In October 2003, Watkins filed an application for disability and SSI benefits, alleging that she was unable to work as of October 6, 2003, due to carpal tunnel syndrome and chronic neck pain resulting from a 1988 injury to her neck and several subsequent cervical spine surgeries. Watkins's application was denied initially and on reconsideration.

After three hearings, the ALJ issued a decision denying Watkins benefits.[2] Following the five-step evaluation process, the ALJ found that: (1) Watkins had not engaged in substantial gainful activity since October 6, 2003; (2) Watkins had severe impairments of cervical spine disorder, carpal tunnel syndrome and a back disorder; (3) none of Watkins's impairments, alone or in combination, met or

---

[1]The parties consented to proceeding before a magistrate judge.

[2]After the first hearing, the ALJ issued a decision denying benefits, which the Appeals Council vacated. The ALJ held a second hearing and issued a second decision denying benefits. The Appeals Council denied review. On judicial review, the district court reversed the ALJ's second decision. On remand, the ALJ held a third, supplemental hearing before issuing the third decision that is the subject of this appeal.

medically equaled a listed impairment; (4) Watkins had the residual functional capacity ("RFC") to perform sedentary work, except that she: (a) could only occasionally climb, crawl, balance, stoop, crouch and kneel; (b) needed to avoid repetitive use of her hands to push and pull or operate hand controls; (c) could only occasionally use the bilateral upper extremities for overhead reaching; (d) must avoid concentrated exposure to vibrations, hazardous machinery and open heights; and (e) must alternate sitting and standing every thirty minutes; but Watkins was unable to perform her past relevant work as a credit analyst, billing clerk and data entry clerk; and (5) given Watkins's age, education, work experience and RFC, Watkins had "acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy," including dispatcher, appointment clerk for medical sources and information clerk.

In determining Watkins's RFC, the ALJ stated that he gave "great weight" to the opinions of Dr. George Feussner, a neurologist, and Dr. Bruce Steinberg, an orthopedic surgeon, who are Watkins's treating physicians in this case. Dr. Steinberg treated Watkins's carpal tunnel syndrome in her hands and arthritis in her thumbs. Dr. Feussner saw Watkins for her neck pain.

The ALJ correctly noted that Dr. Feussner had completed a "Residual

3

Functional Capacity Evaluation" that indicated, among other things, that Watkins: (1) "could sit for 30 minutes at one time, sit for 4-5 hours a day with a 5 minute stretch break each hour, stand for 1-2 hours at a time, and stand for a total of 4-5 hours a day, with a 5 minute stretch break each hour"; and, most importantly for this appeal, (2) "could work for a total of 5 to 6 hours a day, 5 days a week, if [Watkins] were allowed a sit/stand option." The ALJ also correctly noted that Dr. Steinberg, after performing surgeries on Watkins's wrists, opined that she had reached maximum medical improvement and "released her to full duty . . . [with] a 10 minute break for each hour of repetitive activity." The ALJ concluded that "[t]aking all of these work restrictions together, . . .[Watkins] can do sedentary work functions if she is allowed the freedom to shift positions at will, and avoids repetitive use of her hand for pushing and pulling."[3]

Because sedentary jobs existed in the national economy that Watkins could perform, the ALJ concluded that Watkins was not disabled.[4] On judicial review,

---

[3]The ALJ gave "very limited weight" to the opinion of Dr. Joseph Cauthen, a neurologist who also treated Watkins's neck pain. We find no merit to Watkins's challenge to this evidentiary determination. The ALJ specifically articulated reasons for giving limited weight to Dr. Cauthen's opinion, namely that it was inconsistent with Watkins's own testimony as to her activities and with other objective medical evidence. These reasons constitute good cause and are supported by substantial evidence.

[4]Although it does not appear that Watkins appealed the ALJ's third decision to the Appeals Council, the Commissioner waived the exhaustion requirement by not raising it in the district court or in this Court. See Crayton v. Callahan, 120 F.3d 1217, 1222 (11th Cir. 1997) (citing Weinberger v. Salfi, 422 U.S. 749, 765-67, 95 S. Ct. 2457, 2467 (1975)).

the magistrate judge entered an order affirming the ALJ's decision. Watkins filed

this appeal.

## II. DISCUSSION

### A. Five-Step Sequential Evaluation

An ALJ uses a five-step sequential evaluation to determine whether the

claimant is disabled, which considers: (1) whether the claimant is engaged in

substantial gainful activity; (2) if not, whether the claimant has a severe

impairment; (3) if so, whether the severe impairment meets or equals an

impairment in the Listing of Impairments in the regulations; (4) if not, whether the

claimant has the RFC to perform her past relevant work;[5] and (5) if not, whether,

in light of the claimant's RFC, age, education and work experience, there are other

jobs the claimant can perform. See 20 C.F.R. §§ 404.1520(a)(4), (c)-(f),

416.920(a)(4), (c)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir.

2004). If the claimant proves that she cannot do her past relevant work at the

---

[5]Residual functional capacity, or RFC, is a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. §§ 404.1545(a), 416.945(a). RFC includes physical abilities, such as sitting, standing or walking, and mental abilities, such as the ability to understand, remember and carry out instructions or to respond appropriately to supervision, co-workers and work pressure. Id. §§ 404.1545(b)-(c), 416.945(b)-(c). The ALJ's finding as to a claimant's RFC is based on all the relevant evidence in the record, including any medical evidence, and is used in steps four and five of the sequential evaluation to determine whether the claimant can do her past relevant work or any other work. Id. §§ 404.1545(a)(1), (5), 416.945(a)(1), (5).

fourth step, the burden shifts to the Commissioner to show, at the fifth step, that the claimant can perform other work available in the economy. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).

## B. Watkins's Claim

Watkins argues that the ALJ erred by finding that she had the RFC to perform a limited range of sedentary work for a full eight hours a day. Watkins points to Dr. Feussner's RFC evaluation, to which the ALJ gave "great weight," and argues that Dr. Feussner stated that even with a sit/stand option, Watkins could work only between five and six hours in an eight hour work day.[6]

"It is well-established that the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2005) (quotation marks omitted); see also 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2).[7] The ALJ must state with particularity the weight given to

---

[6]Our review is limited to whether the ALJ's decision is supported by substantial evidence and based on proper legal standards. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). Under this limited standard of review, we may not make findings of fact, reweigh the evidence or substitute our judgment for that of the Commissioner. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). We will reverse, however, if the ALJ fails to apply the correct legal standards or fails to provide sufficient reasoning to allow us to determine that the proper legal standards were applied. Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7]Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was

different medical opinions and the reasons therefore. <u>Sharfarz v. Bowen</u>, 825 F.2d 278, 279 (11th Cir. 1987). Moreover, "[t]he ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997); <u>see also</u> 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (requiring the agency to "give good reasons" for not giving weight to a treating physician's opinion).

Here, in determining Watkins's RFC, the ALJ explicitly addressed and gave great weight to Dr. Feussner's RFC evaluation. And, in summarizing the RFC evaluation, the ALJ noted that Dr. Feussner had opined that Watkins could not work more than five or six hours in an eight hour workday if she had a sit/stand option ("sit/stand limitation"). However, the ALJ failed to incorporate Dr. Feussner's sit/stand limitation into his RFC finding or to give a reason for not doing so. Moreover, the ALJ did not include Dr. Feussner's sit/stand limitation in the hypothetical questions posed to the vocational expert.[8] Thus, the ALJ erred when he failed to address Dr. Feussner's sit/stand limitation.

_____

conclusory or inconsistent with the doctor's own medical records." <u>Phillips</u>, 357 F.3d at 1241.

[8]The ALJ's hypothetical question to the vocational expert asked whether there were jobs in the economy for a person with Watkins's RFC who could "[s]tand/walk four to five hours in an eight hour day, sit four to five hours in an eight hour day."

Although the ALJ is not required to specifically refer to every piece of evidence in the record, he is required to "sufficiently explain[ ] the weight he has given to obviously probative exhibits." Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). The ALJ also must "clearly articulate the reasons for giving less weight" to a treating physician's opinion. Lewis, 125 F.3d at 1440. Without a clear explanation of the ALJ's treatment of Dr. Feussner's sit/stand limitation, we cannot determine whether the ALJ's ultimate decision on the merits was rational and supported by substantial evidence.

The Commissioner argues that Dr. Feussner's sit/stand limitation is inconsistent with Dr. Feussner's other statements in his RFC evaluation and with Dr. Steinberg's release of Watkins to "full duty." This point is debatable.[9] However, even if it is true, the ALJ did not offer this or any other explanation in

---

[9]The Commissioner argues that Dr. Feussner's sit/stand limitation is inconsistent with his other RFC findings that Watkins could work for four to five hours while standing ("standing limitation") and for four to five hours while sitting ("sitting limitation"). This argument assumes that Dr. Feussner's sitting limitation and standing limitation can be read together to mean that Watkins could work a total of eight to ten hours of sitting and standing per day. However, it is equally plausible that Dr. Feussner's RFC statements mean that Watkins can work no more than five total hours per day if she either stands or sits, but that, if she combines sitting and standing, she can work up to six total hours per day.

Similarly, the Commissioner argues that Dr. Feussner's sit/stand limitation is inconsistent with Dr. Steinberg's finding that Watkins could return to "full duty" with only the limitation that she have ten minute breaks each hour of repetitive activity. However, Dr. Steinberg was treating Watkins's carpal tunnel syndrome in her hands, not her neck pain. When Dr. Steinberg stated that Watkins had reached maximum medical improvement and released Watkins to "full duty," he arguably was referring to Watkins's impairments in her hands, not her neck. We leave the resolution of these issues to the ALJ on remand.

his apparent decision to discount Dr. Feussner's sit/stand limitation. We cannot affirm based on a post hoc rationale that "might have supported the ALJ's conclusion." See Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984) (involving ALJ's failure to explain credibility finding); see also Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (involving ALJ's failure to mention treating physician's opinion). On remand, the ALJ must explicitly consider and explain the weight to be accorded to Dr. Feussner's opinion as to how many hours per day Watkins can work with a sit/stand option, incorporate this finding into the RFC determination and re-examine, at steps four and five, whether there is work Watkins can perform. We express no opinion on the merits of Watkins's claims for benefits.[10]

Accordingly, we reverse the district court's judgment and remand the case with instructions that it be returned to the Commissioner for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

---

[10]We recognize Watkins's claim that she is disabled because, if she can work only five or six hours with a sit/stand option, she cannot work a full eight hour work day, which Watkins's argues is required at step five in the sequential evaluation. See Soc. Sec. Ruling 96-8p, 61 Fed. Reg. 34,474 (July 2, 1996). Because the ALJ's RFC assessment failed to address the sit/stand limitation, we need not address this issue, but direct the ALJ to do so in the first instance.